## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES PACHECO AND SHERYL** | :: | **CASE NO. 1:25-CV-2440** |
| **KRAUSE PACHECO** | :: | |
| **7023 Anthony Lane** | :: | |
| **Parma Heights, Ohio  44130** | :: | **JUDGE:** |
| | :: | |
| **Plaintiffs,** | :: | |
| | :: | |
| **-v-** | :: | **COMPLAINT: BREACH OF CONTRACT;** |
| | :: | **FRAUDULENT MISREPRESENTATION;** |
| **CROSS RIVER BANK** | :: | **NEGLIGENT MISREPRESENTATION;** |
| **400 Kelby Street, 14th Floor** | :: | **FRAUD IN THE** |
| **Fort Lee, NJ 07024** | :: | **INDUCEMENT/EXECUTION;** |
| | :: | **DECLARATORY JUDGMENT ACTION;** |
| **And** | :: | **NEGLIGENT HIRING AND TRAINING;** |
| | :: | **UNFAIR TRADE PRACTICES ACT;** |
| **SUNLIGHT FINANCIAL LLC d/b/a** | :: | **CONSUMER PROTECTION ACT; CIVIL** |
| **SUNLIGHT FINANCIAL** | :: | **CONSPIRACY; NEGLIGENCE;** |
| **c/o Corporation Service Company,** | :: | **PUNITIVE DAMAGES** |
| **Statutory Agent** | :: | |
| **3366 Riverside Drive, Suite 103** | :: | |
| **Upper Arlington, Ohio 43221** | :: | |
| | :: | |
| | :: | |
| **Defendants.** | :: | |

Now come Plaintiffs, Charles Pacheco and Sheryl Krause Pacheco, by and through the undersigned Counsel, and for their Complaint against Defendants Cross River Bank ("Cross River") and Sunlight Financial, LLC. ("Sunlight") (collectively, "Defendants"), state as follows:

## PARTIES, JURISDICTION AND VENUE

1.     At all times relevant herein, Plaintiffs Charles Pacheco and Sheryl Krause Pacheco (collectively, "Plaintiffs") resided in the City of Parma Heights, County of Cuyahoga, and State of Ohio.

1

2.      At all times relevant herein, Power Home Solar, LLC, doing business as Pink Energy ("PHS"), is/was a Delaware solar company licensed to transact business in the State of Ohio, and was acting together with Defendants Cross River and Sunlight, by and through its agents and/or employees by engaging in the solicitation, sale, installation, and maintenance of solar powered energy systems designed for residential use.

3.      On October 7, 2022, PHS filed for Chapter 7 Bankruptcy, placing an automatic stay, and, as such, it has not been added as a party to this Complaint but will remain named in allegations for the sake of clarity.

4.      Defendant Cross River, at all times relevant herein, is/was a credit union situated in the State of New Jersey and was acting by and through its agents and/or employees, and was acting in concert with PHS and/or Defendant Sunlight by, among other ways, entering into a partnership and/or joint venture agreement to provide financing to customers, including Plaintiffs, in the purchase of the solar panel systems.

5.      Defendant Sunlight, at all times relevant herein, is/was registered as a limited liability company in the State of Delaware licensed to transact business in the State of Ohio and was acting in concert with PHS and/or Defendant Cross River by, among other ways, entering into a partnership and/or joint venture agreement to provide financing to customers, including Plaintiffs, in the purchase of the PHS solar energy systems.

6.      In October 2023, Defendant Sunlight filed for Chapter 11 Bankruptcy and emerged from that Bankruptcy restructuring process in around December 2023. The restructuring included Defendant Cross River purchasing Defendant Sunlight in December 2023 – further solidifying the close partner relationship between these entities.

7.     Plaintiffs entered into a "Solar Energy System Purchase & Installation Agreement" (hereinafter "Sales Agreement") with PHS and a Loan Agreement (hereinafter "Loan Agreement") with Defendant Cross River and Defendant Sunlight, through PHS' agents/employees and said contracts were entered into in Cuyahoga County, Ohio, and form one of the bases of the instant lawsuit. Copies of the Sales Agreement and the Loan Documents are attached as Exhibits "A" and "B" of this Complaint.

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) by virtue of the fact that Plaintiffs are residents of the State of Ohio; Defendants are residents of the State of Delaware and State of New Jersey, thus creating diversity of citizenship; and the amount in controversy in this case far exceeds Seventy-Five Thousand Dollars ($75,000.00).

9.     Venue is proper with this Court pursuant to 28 U.S.C. §1397 and Rule 3.8(c) of the Local Rules for the United States District Court for the Northern District, Eastern Division, by reason that the claims set forth herein arose in the City of Parma Heights, County of Cuyahoga, and State of Ohio.

## GENERAL ALLEGATIONS

10.     Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

11.     In 2021, Plaintiffs became interested in installing a solar panel system to utilize a more efficient and environmentally friendly energy source, and their search identified PHS.

12.     In PHS's literature and advertisements produced at that time, it represented, among other things, the following about its product: (1) that it had superior quality and craftsmanship—including the components used to construct it; (2) that its installers had superior skill and expertise; (3) it would provide continual maintenance of solar energy system after installation; and (4) that there would be extraordinary savings through the solar energy system which would generate enough

3

electricity such that there would be a complete or near complete reduction in monthly electric bills from a customer's utility provider.

13.     Each of these representations knowingly made by PHS were, collectively and separately, patently false, fraudulent, misleading, scientifically inaccurate, scientifically impossible to obtain, and exaggerated beyond mere puffery.

14.     In justifiable reliance on the truth of PHS's representations, Plaintiffs contacted PHS in May of 2021.

15.     On or about June 5, 2021, an agent/employee of PHS and/or Defendants Sunlight and Cross River (herein referred to as the "PHS sales agent/employee") accepted and scheduled an appointment on behalf of PHS and met Plaintiffs at their residence in Parma Heights, Ohio.

16.     The PHS agent/employee, recognizing and acknowledging that Plaintiffs were, in fact, relying on his expertise and guidance as an employee/agent of PHS, made representations consistent with those which are/were contained in PHS's various advertisements that:

> A.     Based on Plaintiffs' expressed expectations, the square footage of their dwelling, a review of their then-existing energy bills, knowledge of the local public utilities rate structure for solar-powered homes, the dwelling's unique topographical setting, and certain local meteorological data that a 9,214 kWh/yr system (21 solar panels) was appropriate to fully meet their expectations;
>
> B.     There would be a significant reduction in Plaintiffs' present monthly electrical bill that would more than offset the cost of the solar panel system;
>
> C.     The panels would produce a sufficient number of kilowatt hours to reduce Plaintiffs' usage/cost by a significant percentage of their yearly energy consumption;
>
> D.     Plaintiff would generate an average number of kilowatt hours per year based on the representations in paragraph A that would generate all or nearly all of Plaintiffs' yearly electric needs;

4

E. Upon timely execution of the Sales Agreement, Plaintiffs would receive additional financial benefits via Federal and/or State tax credits which could be applied through various options provided by PHS, Defendant Sunlight and/or Defendant Cross River.

17. PHS also provided Plaintiffs with an "energy efficiency package" ("EEP") which purportedly included miscellaneous trinkets such as LED light bulbs, a thermal blanket, and power strips.

18. As part of the sales presentation, the PHS agent/employee grouped the solar system output and supposed EEP benefits together to calculate the amount of energy Plaintiffs would draw from the electric grid versus the amount they would make/save by switching to the PHS solar system. In this case, the Plaintiffs were told by the PHS agent/employee that their electric bill would be eliminated since the solar panel system would produce more electricity that Plaintiff's used.

19. In addition to the false promises of energy savings, PHS grossly overprices its solar panel systems. For example, The National Renewable Energy Laboratory ("NREL"), a branch of the U.S. Department of Energy, estimates that the average cost for the purchase and installation of a residential solar system was approximately $2.68 per watt for the calendar year 2021. Using NREL's average of $2.68 per watt, Plaintiffs should have paid approximately $24,693.52 for their 9,214-kilowatt solar system. Defendants charged Plaintiffs $62,750.50 ($6.81 per watt) for their solar system – a nearly 300% markup.

20. PHS directed and trained its employees to engage in high-pressure hard-sell sales tactics, which included, but were not limited to, misleading customers as to the efficiency of the solar panels PHS sold, manipulating customers' concerns with what were referred to as "pain points" about rising utility costs in an attempt to make customers quickly sign a contract which they had neither the opportunity nor ability to read.

21. Defendants also used various hard-sell techniques, such as providing cash

incentives and erroneous promises and threats regarding the Federal Tax Credit in an attempt to create urgency to purchase, stating that such incentives may not be available if Plaintiffs did not sign that day. Specifically, Defendants and PHS misrepresented that Plaintiffs would received a guaranteed rebate check from the federal government for installing solar panels, which was false.

22.     Plaintiffs relied on these promises and others made by PHS and Defendants in agreeing to purchase the solar panel system.

23.     Once knowingly making the false, fraudulent, and misleading representations referred to above, the PHS agent/employee produced an electronic copy of the Sales Agreement on his table for review.

24.     This agreement was not provided in written format and was only observable and reviewable on an electronic device.

25.     PHS's agent/employee, with knowledge that the pace of review of the Sales Agreement was within his control, knowingly scrolled through each paragraph at a rapid and unacceptable pace, while simultaneously giving his inaccurate and erroneous interpretation of the content of the Sales Agreement and never providing Plaintiff the opportunity to review the agreement.

26.     Upon PHS's agent/employee concluding his explanation of the Agreement, the PHS agent/employee would request a single signature and initial from Plaintiffs via an electronic signature program (e.g. DocuSign) and then, once the signatures were obtained, the PHS agent/employee auto-filled Plaintiffs' initials after each paragraph by simply tapping the portions of the agreement – again never providing Plaintiff the ability to read the agreement but making it appear as though they did.

27.     The Sales Agreement included a number of restrictive clauses, including an arbitration clause, limitation of liability, and the waiver of constitutional rights, none of which were

discussed by PHS's agent/employee while supposedly reviewing the Sales Agreement with Plaintiffs.

28.     Said PHS agent/employee, acting in a dual capacity, then confirmed financing for the sale of the chosen solar energy system with a predetermined finance company acting in concert with PHS.

29.     At the time of the home sale presentation, the PHS agent/employee would, as an integral part of the presentation, provide Plaintiffs with the only option of Defendants Cross River and Sunlight Financial, which were chosen by PHS pursuant to their partnership agreement.

30.     Plaintiffs were not provided with an option of securing alternative financing from those financial institutions selected by PHS.

31.     Unbeknownst to Plaintiffs, PHS had entered into program agreements with Defendants Cross River and Sunlight Financial to create a partnership/joint venture for the sale and financing of solar panel systems.

32.     Defendants Sunlight and Cross River also collaborated with PHS to design these techniques and the sales pitch that PHS agents would use to sell solar panel systems and the financing for said systems. These techniques included those described above and further included highlighting the monthly loan payments for the solar panel systems as replacing a customer's monthly electric bill since the solar panel system would produce enough energy to meet the customer's monthly electric use. In other words, the customer would be no worse off switching to solar because it would not cost more than the customer's monthly electric bill.

33.     In fact, the partnership agreement between Sunlight, Cross River and PHS specifically required the collaboration of these entities on how they would sell and finance these systems to customers, including Plaintiff.

34.     The partnership agreements also included a hidden finance scheme that PHS and Defendants devised to make the sale and financing of solar panel systems to customers more lucrative. Specifically, the hidden fee scheme worked by PHS presenting a customer with a price for the system that included a baked-in fee for financing that was never disclosed to the customer. For example, a customer would purchase what PHS represented was a $100,000 solar panel system, but Defendants Cross River Bank and Sunlight Financial - in funding the loan for the solar panel system - would only pay PHS $80,000. The $20,000 gap represented a hidden financing fee that was never disclosed to customers. Moreover, Defendants Sunlight Financial and Cross River Bank would continue to charge the customer interest on the full $100,000 purchase.

35.     The exact fee that Defendants charged to Plaintiff is unknown as the fee changed from month to month based on the agreement (discussed below) between PHS and Defendants.

36.     The hidden fee was not present if the Plaintiffs were to have paid in cash. In fact, according to PHS's CEO, Jayson Waller, Plaintiff's would have received a 10% discount had they been offered the opportunity to pay in cash and not used Defendants for financing.

37.     Plaintiffs were never advised of this hidden fee / kickback agreement or that their loan included a marked-up price simply because they financed the purchase of the solar panel system.

38.     The partnership agreement between Sunlight, Cross River, and PHS also dictated deep coordination between these entities as it related to the sale and financing of solar panel systems. Specifically, the agreement required the exchange of marketing data, collaboration on marketing and training, sales competitions, the exchange of product competitiveness data, the exchange of solar panel production data, etc.

8

39.     The partnership agreement also gave Sunlight and Cross River control over certain aspects of PHS's business, including the types of warranties offered, the qualifications of contractors, the ability to hire and fire contractors that worked on behalf of PHS, and the ability to use PHS assets to assist in debt recovery efforts, etc.

40.     After completing the "signing" of the Sales Agreement, the PHS agent/employee produced an electronic copy of Defendant's Cross River/Sunlight's Loan Agreement, which was presented to Plaintiffs in the same rushed manner as the Sales Agreement.

41.     Similarly, the Loan agreement was not provided in a written format and was only observable and reviewable on an electronic device.

42.     PHS's agent/employee, with knowledge that the pace of review of the Loan Agreement was within his control, knowingly scrolled through the Loan Agreement at a rapid and unacceptable pace, while simultaneously giving his inaccurate and erroneous interpretation of the contents of the Loan Agreement, and failing to provide Plaintiff an opportunity to review the agreement before signing.

43.     Plaintiffs relied on this misrepresentations and the failure to disclose the hidden financing scheme in agreeing to finance their solar panel system purchase with Defendants.

44.     Upon the PHS agent/employee concluding his explanation of each paragraph, Plaintiffs were to sign once via an electronic signature program and then the PHS agent/employee auto-filled Plaintiffs' signature after each paragraph. Plaintiff did not sign each portion of the loan agreement.

45.     The loan provided to Plaintiffs from Defendant Cross River and/or Sunlight was a "Purchase Money Loan" as defined in the Ohio Retail Installment Sales Act.

46.     The Loan Agreement contained a "Holder Rule" Notice subjecting

Defendants, as the loan holders, to "all claims and defenses which the debtor could assert against the seller of good or services obtained with the proceeds hereof…" a contract provision that subjects Defendants to any liability that may arise based on the misconduct of PHS.

47.     Once the sale was complete, PHS was then required to obtain the necessary permits and authorizations from various entities (e.g. Homeowner Associations, local power companies services Plaintiffs' dwelling, and local government permit offices).

48.     After the contracts were signed, an installation crew and/or a sub-contractor crew hired/retained by PHS as their agents and/or employees, arrived at Plaintiffs' residence and commenced the installation of the solar energy system.

49.     PHS changed the project design with regard to the placement of the panels, Generac battery, conduit, and backup load panel, without providing any notice to, or seeking written approval from Plaintiffs.

50.     The installation crew had a putative crew leader who represented to Plaintiffs that they were employees of PHS.

51.     Further, the crew leader represented to Plaintiffs that the crew consisted of well-skilled craftsmen who were well-trained in the installation of solar panels.

52.     Said representations were false.

53.     After the initial conversation with Plaintiffs, the installation crew, under the direction of the crew leader, commenced installation of the solar panel system, resulting in substandard workmanship and property damage that become apparent sometime after installation.

54.     PHS also represented to Plaintiffs that the solar panel system was fully activated when it was not and could not have been until fully approved by local entities and Plaintiffs' utility company.

55.     Since installation and alleged activation of the system, the solar energy system has consistently failed to produce the kilowatt hours contracted for with PHS.

56.     Instead, Plaintiffs' system generated, on average, significantly lower output than was quoted to them prior to signing the Sales Agreement.

57.     Plaintiffs' electrical bills have remained largely unchanged since the activation of their solar energy system, and now they must pay the amount billed by their electric company in addition to the new loan payment for the installation of the system.

58.     Plaintiffs continued to try to work with Defendants and PHS regarding their solar system's issues, yet Defendants and PHS have failed to fix the problems with Plaintiffs' solar system and, in fact, began to ignore Plaintiffs' calls for customer support.

59.     In 2023 other plaintiffs harmed by PHS and Defendants filed suit in the Southern District Court of Ohio against PHS and defendants for their conduct.

60.     This Court at that time transferred their case to Michigan under the "First to File" rule since that lawsuit also named Trivest Partners and Jayson Waller as defendants.

61.      The Michigan Court ultimately dismissed the case against Trivest Partners because there was no jurisdiction against them in Michigan when all the conduct occurred in Ohio.

62.     The Michigan Court also enforced an arbitration agreement contained associated loan agreement.

63.     The arbitration agreement is nearly the same as it is here.

64.     Following that order and given the nearly identical arbitration agreement here, these Plaintiffs went to arbitration with Defendant through Judicial Arbitration and Mediation Services, Inc. (JAMS).

65.     Since July 12, 2024, Plaintiffs have arbitrated this claim with JAMS pursuant

to the Court's order.

66.     Over the course of the arbitration, Defendants filed their answer to Plaintiff's complaint, and the parties were engaged in discovery, including the scheduling of 30(B)(6) depositions.

67.     However, after over a year litigating this case in Defendants' chosen forum, Defendants stopped paying for arbitration altogether and provided JAMS with no explanation as to the its sudden refusal to pay for the arbitration.

68.     As a result of Defendants' failure to pay, JAMS has halted all proceedings related to this case until Defendants pay their bill, forcing Plaintiffs to file this action to get relief.

**COUNT ONE**
**(Breach of Contract)**

69.     Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

70.     The Sales Agreement between Plaintiffs and PHS, among other things, agreed and promised the following about the system: (1) that it would significantly lower Plaintiffs' "grid" electric consumption (i.e. the amount of electricity produced from an energy grid); (2) that it would produce sufficient solar power energy to supply sufficient power for Plaintiffs' daily residential use; and (3) that it would provide Plaintiffs the ability to store for future use and/or sell excess energy produced by the system.

71.     Additionally, PHS promised to maintain the solar system that it and/or its agents installed on Plaintiffs' home.

72.     To date, the solar energy system provided by PHS fails to meet these contractual requirements as it was installed in an unworkmanlike manner, has failed to be fully installed, has failed to be fully activated, has failed to produce energy as represented and contracted for, and has not been repaired.

73. Plaintiffs have complied with all terms and conditions under the Sales Agreement, including providing notice of these defects with the system both in writing and orally, to both PHS and Defendants.

74. Despite this notice, PHS and Defendants have repeatedly failed to resolve said issues with the solar panel system.

75. While PHS and Defendants repeatedly promised that they would repair the faulty systems, those promises were never followed through on.

76. PHS also expressly and impliedly breached the terms of the Sales Agreement after it filed for bankruptcy on October 7, 2022, and (1) ceased communication with customers, including Plaintiffs; (2) failed to respond to requests for repairs; and (3) would not be repairing and/or maintaining the systems.

77. As the direct and proximate cause of PHS and Defendant Cross River and Sunlight's breach of contract, Plaintiffs have suffered damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

78. Plaintiffs also ask this Court for an order of recission for the Sales Agreement and Loan Agreement between Plaintiffs and Defendants and/or PHS.

79. This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, and by virtue of their partnership/joint venture relationship with PHS.

**COUNT TWO**
**(Breach of Warranty)**

80. Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

81. As described above, Defendants and PHS warranted that the solar panel

system installed on Plaintiffs' home would produce all or substantially all of Plaintiffs' energy needs, significantly lower their energy costs, and would be repaired/maintained.

82.     Plaintiffs' solar panel system did not produce all or substantially all of their energy needs, nor did it significantly lower their energy costs.

83.     Defendants and PHS breached their express and implied warranties when they delivered and installed a solar panel system that did not meet their express or implied warranties about performance, was unsafe, defective and in an unfit condition, made from non-quality parts, and by further failing to repair the system.

84.     Defendants and PHS expressly and implied breached these warranties after PHS filed for bankruptcy on October 7, 2022, and (1) ceased communications with customers, including Plaintiffs; (2) failed to respond to requests for repairs; and (3) would no longer be attempting to repair the systems.

85.     As the direct and proximate cause of PHS and Defendant Cross River and Sunlight's breaches of their various warranties, Plaintiffs have suffered damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

86.     This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, and by virtue of their partnership/joint venture relationship with PHS.

**COUNT THREE**
**(Negligent Misrepresentation)**

87.     Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

88.     PHS and Defendants supplied false information and/or made false or misleading statements about the system to Plaintiffs, including but not limited to, and among other

things set forth above: (1) the quality of PHS's solar panel system; (2) the efficiency of said system; (3) the workmanlike quality of their installation crews; and (4) the continued service/maintenance of their systems.

89.     Additionally, PHS and Defendants made numerous representations and promises to Plaintiffs that issues with their system would be remedied and that Plaintiffs would receive the product they was promised and paid for.

90.     Yet, this did not come to fruition.

91.     Moreover, PHS and Defendants made false and misleading statements that Plaintiffs could reduce their monthly payments by paying Defendants a significant lump-sum installment after they receive a government tax credit for the solar panel system (which itself was misrepresented as a kind of rebate). Defendants misrepresented the solar panel tax credit as being guaranteed money from the government for solely purchasing a solar panel system when in fact it was entitle dependent on the income of the Plaintiffs and the amount of money they prepaid in taxes.

92.     Each of these representations, among others, were false.

93.     The full scope and extent of the misrepresentations by PHS and Defendants have yet to be fully discovered.

94.     As the direct and proximate result, Plaintiffs justifiably relied on the false information received from PHS and Defendants.

95.     As the direct and proximate result, Plaintiffs have suffered damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

96.     This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, and by virtue of their

partnership/joint venture relationship with PHS.

## COUNT FOUR
### (Fraudulent Misrepresentation/Inducement)

97.     Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

98.     By and through their employees/agents and with actual and/or constructive knowledge, Defendants and PHS, made material misrepresentations and/or omissions as set forth herein, which concerned, among other things, the quality and nature of the solar panel systems, the benefits that Plaintiffs would receive from the system, the availability of federal tax incentives, and hidden features of the loan agreement, including the hidden fee/kickback scheme that Defendants and PHS devised.

99.     Those misrepresentations were made with the intent to mislead Plaintiffs into relying on such.

100.     Plaintiffs justifiably relied on PHS and Defendants' fraudulent and false representations to their detriment.

101.     As the direct and proximate result, Plaintiffs have suffered damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

102.     This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, by virtue of their partnership/joint venture relationship with PHS, and for their individual conduct.

## COUNT FIVE
### (Negligent Selection/Training)

103.     Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

104.     Defendants and PHS owed a duty of exercising reasonable care in hiring and

training its contractors and/or agents/employees to sell, install, activate, and maintain the solar energy systems installed on Plaintiffs' property.

105.    Defendants and PHS breached this duty by failing to exercise reasonable care in hiring and failing to properly train the contractors and/or agents/employees responsible for installing and/or maintaining the solar energy systems installed on Plaintiffs' property.

106.    As the direct and proximate result of the aforementioned breach, Plaintiffs suffered those damages as set forth in the General Allegations and other causes of action.

107.    This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, and by virtue of their partnership/joint venture relationship with PHS.

## COUNT SIX
## (Negligence)

108.    Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

109.    PHS, by and through their agents/employees, owed a duty to individuals, including Plaintiffs, to use reasonable care when selling, installing, and monitoring its solar energy products.

110.    PHS, by and through its agents/employees breached that duty and was negligent in, among other things, providing Plaintiffs with incorrect information regarding the expected output of this solar energy system, causing damage to Plaintiffs' property during the installation of the solar system, failing to monitor/maintain said system, and failing to cure any problems or defects that arose after installation was complete.

111.    As the direct and proximate result of the aforementioned breach, Plaintiffs suffered those damages as set forth in the General Allegations and other causes of action.

112.    This cause of action is brought against Defendants Cross River and Sunlight

17

under their Holder Rule obligation, via the conspiracy charge set forth below, and by virtue of their partnership/joint venture relationship with PHS.

**COUNT SEVEN**
**(Ohio Consumer Sales Practices Act (CSPA): Prior to Litigation)**

113.    Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

114.    Plaintiffs are, individually, "consumer[s]" within the meaning of Ohio Rev. Code § 1345.01(D).

115.    PHS and Defendants are each a "supplier" as defined by Ohio Rev. Code § 1345.01(C).

116.    PHS and Defendants' sale and financing of a solar panel system to Plaintiffs is a "consumer transaction" as defined by Ohio Rev. Code § 1345.01(A), as the transaction involved a sale of an item or goods which Plaintiffs purchased a consumer good from PHS.

117.    As detailed above, PHS and Defendants committed unconscionable, unfair, and unlawful acts and practices by, among other things, engaging in high-pressure sales tactics, including threats that Plaintiffs would lose the solar tax credit (among other benefits) if they did not immediately sign the Sales Agreement and repeatedly quoting Plaintiffs with estimates of power output that PHS knew, or should have known, their systems were incapable of producing, presenting financing for the system that failed to disclose hidden fees that Plaintiffs are now forced to pay, and failing to properly disclose the relationship between PHS and Defendants Sunlight Financial, LLC. and Cross River.

118.    Additionally, Defendants and PHS engaged in unfair practices by misrepresenting: (1) that the monthly installment payment under the loan would be entirely offset by the energy savings from the solar panel system; (2) that Plaintiffs could reduce their monthly payments by paying Cross River/Sunlight a significant lump-sum installment after they receive a

18

government tax credit for the solar panel system; (3) that Plaintiffs could pay off their loan during the loan period and incur no upfront costs and zero interest; and (4) the hidden fees charged to customers, like Plaintiff, for the financing of their solar panel systems – all of which were false statements used to secure sales of the grossly overpriced solar panel system.

119.    Beyond the violations above, Defendants also inserted misleading contract provisions in their financing agreement that incorrectly stated that Plaintiffs' obligation to repay the loan is independent of the solar energy system's performance, thus leading Plaintiffs to assume they had to continue paying on a system that did not work.

120.    Despite being aware that the system did not work, Defendants unconscionably demanded payment from Claimant under the loan agreement.

121.    PHS and Defendants' conduct violates Ohio Rev. Code § 1345.01 *et seq.* as an unfair, unconscionable, and/or deceptive act in connection with a consumer transaction.

122.    Defendants and PHS further engaged in fair practices by engaging in conduct that is contrary to public policy, is unscrupulous, and caused injury to Plaintiffs.

123.    As the direct and proximate result of the foregoing, Plaintiffs have suffered injuries including but not limited to actual damages and consequential damages.

124.    As a result of these violations by Defendants and/or PHS, Plaintiffs are entitled to an award of actual damage, statutory damages—including treble, and an award of reasonable attorneys' fees.

125.    This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, by virtue of their partnership/joint venture relationship with PHS, and because of their individual conduct.

## COUNT EIGHT
### (Ohio Consumer Sales Practices Act: Conduct in Litigation)

126.    Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

127.    As detailed above, Defendants committed unconscionable, unfair, and unlawful acts and practices by, among other things, forcing Plaintiffs through a lengthy and costly arbitration process and then failing to pay for said arbitration, ultimately leading to its termination.

128.    Additionally, Defendants engaged in unfair practices by misrepresenting that it would carry out its end of the agreement to arbitrate—namely that it would pay the arbitrators and engage in good faith after forcing Plaintiffs to use that forum.

129.    These actions constitute unfair, unconscionable, and/or deceptive acts in connection with a consumer transaction.

130.    As a result of these violations by Defendants, Plaintiffs are entitled to an award of actual damage, statutory damages—including treble, and an award of reasonable attorneys' fees.

## COUNT NINE
### (Truth in Lending Act)

131.    Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

132.    Defendants and PHS improperly inflated the cash price of the solar energy system sold to Plaintiffs simply because the transaction was financed.

133.    Specifically, unbeknownst to Plaintiffs, PHS had an agreement with Defendants Sunlight Financial and Cross River, where Defendants Sunlight Financial and Cross River would charge customers, including Plaintiffs, a hidden finance charge that was not charged to customers who paid in cash or via a lender other than Defendants (i.e. a home equity line).

134.    The hidden finance fee that was never disclosed to customers was calculated by PHS as part of the overall system price. For example, a system that actually cost $80,000, would

have a cost a customer $100,000 to account for the hidden finance fee of 20% that Defendants Sunlight Financial and Cross River Bank received but never disclosed to customers, including Plaintiffs.

135.    Plaintiffs are presently unaware of the exact financing fee that they incurred as the exact amount changes from month to month based on the partnership agreement between PHS and Defendants.

136.    Jayson Waller, the CEO of PHS testified in one of many depositions that he has given in conjunction with this nationwide fraud that customers who paid in cash or via alternative financing (i.e. a home equity line) were to get a discount on the price of the solar panel system because the hidden finance fee that Defendants Sunlight Financial and Cross River Bank had to charge would not be applicable.

137.    Nowhere on the Truth in Lending Act Disclosure in Plaintiffs' Loan Documents does it disclose this hidden financing fee that was applied to Plaintiffs' loan.

138.    Rather, the Truth in Lending Act Disclosure for Plaintiffs' loan documents provides that Defendants Sunlight Financial and Cross River Bank paid PHS the full purchase price amount for the solar panel system.

139.    In reality, Defendant Sunlight and Cross River Bank never paid PHS the purchase price amount – instead, they withhold their hidden fee that was never disclosed and paid PHS the remaining amount due.

140.    Defendant Sunlight Financial and Cross River Bank's failure to properly disclose the hidden financing fee constitutes a violation of the Truth in Lending Act (TILA) pursuant to, among other things, 15 U.S.C. § 1638(a).

141.    Plaintiffs were denied proper disclosure and could not knowledgeably shop

21

for credit to buy a solar installation.

142.    Plaintiffs would not have purchased the system had they known they were being charged a significantly higher price just for using Defendants as lenders.

143.    As the direct and proximate result of Defendant and PHS's violations of the Truth in Lending Act, Plaintiffs suffered damages in the forms described in the General Allegations as well as the various causes of action listed in the complaint and is entitled to additional statutory damages as well as loan recission.

144.    This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, by virtue of their partnership/joint venture relationship with PHS, and because of their individual conduct.

**COUNT TEN**
**(Home Solicitation Sales Act ("HSSA"))**

145.    Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

146.    The sale of solar panels to Plaintiffs by PHS was a sale of consumer goods under the HSSA.

147.    This sale of consumer goods came about as the result of a seller engaging in a personal solicitation at Plaintiffs' residence.

148.    Ohio Rev. Code § 1345.23(D)(5) prohibits the seller of a consumer good from obtaining financing for the consumer within five days after the contract for the sale of goods is signed.

149.    Acting for Defendants and PHS, the salesman secured financing for Plaintiffs on the same date as sale.

150.    This is a plain violation of the HSSA.

151.    As the direct and proximate result of this, Plaintiffs suffered injuries including but not limited to the damages described in the General Allegations and those in the preceding

individual counts.

152.     This cause of action is brought against Defendants Cross River and Sunlight under their Holder Rule obligation, via the conspiracy charge set forth below, and by virtue of their partnership/joint venture relationship with PHS.

## COUNT ELEVEN
### (Conspiracy/Partnership/Joint Venture)

153.     Plaintiffs incorporate all preceding allegations as if fully reproduced herein.

154.     The cost of installation of the solar energy system provided to Plaintiffs was greatly overpriced, requiring Plaintiffs to pay more than double the cost of the national average per kilowatt hour for a similar solar energy system in 2021.

155.     Knowing that having easily available credit extended to the potential purchaser of a system would further promote the sale of the system, PHS, along with Defendants, conspired together to facilitate the sale of the system.

156.     Other than specific lenders provided by PHS, Plaintiffs were unaware they could seek financing through a third party.

157.     Defendants knew or should have known that PHS secured the signing of the Sales and Loan Agreements with Plaintiffs through fraudulent, false, and misleading representations at the time of sale and that said fraudulent conduct continues to present day.

158.     Defendants had specific employees and/or departments dedicated to "Partner Relations" that that was intimately familiar with PHS and its sales practices and further advised Plaintiffs that they were partnering with PHS.

159.     Having such knowledge, Defendants acted in concert with PHS in facilitating the fraudulent conduct by agreeing to be one of the financial institutions provided to customers, including Plaintiffs, by PHS.

160.     Having entered into this conspiratorial and/or partnership and/or joint venture relationship, PHS and Defendants acted to secure the Sales and Loan Agreements and ultimately for Defendants to provide the financing of said system.

161.     Defendants benefited from this conspiracy by securing Plaintiffs as a payor and ensuring that independent of whether PHS actually performed all of their duties under the Sales Agreement, Plaintiffs would be obligated to satisfy the loan.

162.     Defendants further solidified their partnership with PHS through various agreements that were designed to facilitate the fraudulent sale of solar panel systems to customers, including Plaintiffs.

163.     Defendants' and PHS's conduct was knowing, intentional, reckless, and malicious.

164.     As the direct and proximate result of this, Plaintiffs suffered injuries including but not limited to the damages described in the General Allegations and those in the preceding individual counts.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Sunlight Financial LLC. and Cross River Bank, equally and severally in an amount exceeding $75,000.00, and punitive damages, attorneys' fees, interest, cost, rescission of the loan and purchase agreements, and any further relief to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ Andrew R. Burton*
Stacie L. Roth (0071230)
Richard D. Reinbold (0024152)
Andrew R. Burton (0100996)
**SCHULMAN, ROTH & ASSOC. CO., LPA.**
213 Market Avenue North, #300
Canton, Ohio 44702
(330) 456-4400 (telephone)
(330) 456-3641 (FAX)
sroth@lawyersonyourside.com
aburton@lawyersonyourside.com

And

*/s/ Robert J. Tscholl*
Robert J. Tscholl (0028532)
Robert J. Tscholl, LLC
213 Market Avenue North, #300
Canton, Ohio 44702
330-497-8614
330-456-3641 (FAX)
Btscholl740@@yahoo.com

*Counsel for Plaintiffs*


## REQUEST FOR ISSUANCE OF SUMMONS

Plaintiffs hereby state that pursuant to Federal Civil Rule 4(b), Plaintiffs have presented a

Summons for each Defendant. Plaintiffs hereby request that said Summons be signed and sealed

by the Clerk of Courts and issued to Plaintiffs for service.


*/s/ Andrew R. Burton*
Counsel for Plaintiffs